IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEANIE CORBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Case No. 08-CV-0136-MJR |
| SOUTHERN ILLINOIS HEALTHCARE GROUP HEALTH PLAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

The underlying issues in this case brought under § 502(a) of the Employees Retirement Income Security Act of 1974 (ERISA), **29 U.S.C.A. § 1132(a) (West 2009)**, have been settled by agreement of the parties. What remains is the determination of attorney fees. Plaintiff Jeanie Corbell has moved for the Court to award her $59,004.15 in attorney fees. (Doc. 46.) The sole defendant, Southern Illinois Healthcare Group Health Plan (Plan), does not dispute that Corbell is entitled to attorney fees[1] but opposes the amount of fees, suggesting instead that the Court award her $20,802.90, less than half of the amount requested. Corbell later modified the fee request to account for additional work performed after the initial and now claims $62,542.15. The Court now considers her motion for fees (Doc. 46).

**I.    Facts**

This ERISA litigation arises from the denial of medical benefits for neuro-rehabilitative treatment to Corbell who was covered under the Plan. According to her complaint,

---

[1] The plan asserts the only issue for the Court's consideration is whether the fees sought are reasonable (*see* Doc. 57) since it agreed to pay reasonable fees as determined by the Court (*see* Doc. 44).

Corbell was in a single-car accident on July 28, 2006, and sustained critical injuries, including trauma to the brain. After her physical condition stabilized, her physicians prescribed neuro-rehabilitative therapy for her brain trauma, but she was initially denied coverage because the facility at which she would be treated provided a higher a level of nursing care then needed. She tried again later at a facility called Center for Comprehensive Services (CCS) and was initially granted coverage. She began treatment on May 7, 2007, but had to request approval from the Plan every 30 days, which she claims she did. On August 30, however, the Plan denied benefits for treatment during the month of May and eventually denied all coverage for treatment incurred at CCS. The treatment at that point exceeded $100,000.

Soon after that, she retained the legal services of Mr. Robert Wilson, who is admitted to the bar of this Court and has 30 years experience, little or none of which is in ERISA matters.[2] He in turn enlisted the services of Ms. Tammi Jackson and Mr. Zachary Hosman, associates in his firm of Wilson & Henshaw located in Harrisburg, Illinois. Jackson and Hosman are admitted generally to this Court while Mr. Matthew Effland, who was also employed by plaintiff, is not admitted to the bar of this Court either generally or for this case.[3] Effland swears that he specializes in employment law and is a shareholder in the firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. based in Indianapolis, Indiana. (Effland Aff. 1; Wilson Aff. 2.) Effland is the cousin of Douglas Corbell, Jeanie's husband, and agreed to work on her legal matters for free. (Douglas Corbell Aff. 1–2.) He has engaged in ERISA litigation before. (Effland Aff. 2.) When Effland began assisting, he

---

[2] Wilson describes his ERISA experience as "minimal."

[3] Neither Effland nor Wilson indicate to which courts Effland is admitted to practice, nor does Wilson indicate to which courts his associates are admitted. This Court takes judicial notice Wilson's associates are admitted to the Southern District of Illinois but Effland is not.

2

was an associate at his firm, has since become a shareholder and as of now has 10 years experience. Wilson swears that he supervised all of Effland's work in this case. (Wilson Aff. 2.)

Between retainer of counsel and commencement of suit on February 27, 2008, Corbell's counsel did more work than simply preparing the complaint. They were also involved in pursuing the administrative appeal of the denial of benefits. During September through November 2007, her attorneys contacted Southern Illinois Healthcare (SIH), the administrator of the Plan, along with Waterstone and HealthLink, which were claim administrators for the plan. Her attorneys requested the claim file so that they could perfect an administrative appeal; for whatever reason, they did not get the documents they needed to complete the appeal and turned instead to litigation. The litigation before the Court included a motion to dismiss, discovery regarding the claim file, a status conference on February 19, 2009, and a settlement conference on March 12. At the settlement conference on March 12, the Plan agreed to cover fully Corbell's treatment in 2007 at CCS. Corbell abandoned her equitable claims because she received payment of benefits due for 2008.

Corbell's attorneys submitted affidavits and documentation with her motion for fees in which they indicate the number of hours they or their associates worked along with the rate that they attest is the usual rate offered to the public. Wilson swears that he billed Corbell for 29 hours at the rate of $228.88 per hour, and 36.1 hours at the rate of $250 per hour, resulting in $15,662.50. (Wilson Aff. 2.) The reason for the difference in rate was due to a clerical error; his usual rate is $250 per hour. He also swears he billed Corbell for 7.08 hours of Ms. Jackson at the usual rate of $125 per hour, totaling $885, and 2.1 hours of Mr. Hosman's work at a usual rate of $80 per hour, totaling

$168. (*Id.*) The motion also claims "Mr. Wilson's expenses" in the amount of $538.65, which appears to be the sworn-to amount of out-of-pocket expenses incurred by the firm.[4] (*Id.*)

The bulk of the fees claimed are for Effland, who swears that while an associate with a rate of $235 per hour he worked 27.8 hours. When made shareholder in 2008, his rate was increased to $280 per hour and he worked 25 hours. His rate went up again in 2009 to $290 per hour, when he worked 97.3 hours. This totals $41,750. Corbell also claims 12.2 hours additional for Effland to prepare the reply to the motion (Doc. 58) and to prepare a motion to seal their memorandum in support of fees (Doc. 49), for an additional $3538. This additional amount is supported by documentation and supplemental affidavit, in which Effland also swears that the motion to seal was prepared under threat of sanctions from the Plan. Due to Effland's prior arrangement and relationship with Douglas Corbell, Effland never billed any of his fees. With the amounts claimed from Wilson and associates, the grand total claimed is $62,542.15.[5]

The Plan, as an alternate reference, proffered the rates of its attorneys through affidavits and documentation. Mr. Thomas Berry charged the highest rate of the Plan attorneys: $185 per hour.

## II. Analysis

Courts have discretion to award reasonable attorney fees and costs to either party in ERISA litigation. **ERISA § 502(g), 29 U.S.C.A. § 1132(g);** *Laborers' Pension Fund v. Lay-Com, Inc.*, **580 F.3d 602, 615 (7th Cir. 2009).** The award of fees inures to the benefit of the litigant, not counsel for the litigant. **ERISA § 502(g)(1) ("[T]he court in its discretion may allow**

---

[4] Corbell does not itemize what is charged under the heading "out-of-pocket expenses." Whatever they are, though, they are not hours worked by an attorney multiplied by an hourly rate.

[5] $538.65 of this amount is for Attorney Wilson's out-of pocket expenses which are not challenged by defendant.

4

a reasonable attorney's fee and costs of action to either *party*." (emphasis added)); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996) ("Most fee-shifting statutes, including ERISA, direct the award to the *litigant* rather than the lawyer."). The litigant is able to obtain an award of attorney fees "even to those plaintiffs who did not need them to maintain their litigation" due to free-of-charge representation. *Cent. States*, 76 F.3d at 116 (quoting *Venegas v. Mitchell*, 495 U.S. 82, 87–88 (1990)).

The starting part for determining a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)). Hours are not reasonably expended "if they are excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999)). Hours also not reasonably expended are those "spent litigating claims on which the party did not succeed to the extent they were distinct from claims on which the party did succeed." *Id.* (citing *Spegon*, 175 F.3d 544).

The reasonable hourly rate is the market rate, "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996)). The burden of proving the market rate is on the applicant, but "once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded." *Id.* at 674–75 (citing *McNabola v. Chi. Transit Auth.*, 10 F.3d 501 (7th Cir. 1993)). "The best evidence of the market value of legal services is what people will pay

5

for it." *Id.* **at 675 (citing** *Balcor Real Estate Holdings, Inc. v. Walentas Phoenix Corp.***, 73 F.3d 150 (7th Cir. 1996)).**

After the basic lodestar is determined, it can be adjusted based on twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anderson***, 578 F.3d at 544 n.1 (quoting** *Hensley***, 461 F.3d at 430 n.3).** Many of the factors are part of the initial calculation of hours and rate. *Id.* **at 544 (quoting** *Hensley***, 461 F.3d at 434 n.9).**

Although Corbell did not recover on Count I, she nevertheless claims fees for the work done on Count I along with the work done on Counts II and III. The Plan, however, does not challenge or dispute her fees on the basis that she did not prevail on Count I. Instead, the Plan challenges the claimed fees on the basis that both the number of hours charged and the rates suggested are unreasonable. First, it argues that the fees claimed for work in the administrative process should not be allowed; only the fees incurred during preparation of the actual lawsuit are recoverable. Second, it argues that the rates claimed by the attorneys are not reasonable because they do not reflect the relevant market, which they claim is the legal market of the Southern District of Illinois. Third, it argues that many of the hours worked during the litigation were unnecessary or duplicative of work done by Corbell's other attorneys.

Pre-litigation work

The Plan's first challenge has not yet been decided by the Seventh Circuit. A portion of the fees claimed was for work that was technically not for preparing the litigation proper but instead on the administrative appeal process. The Plan accordingly challenges those fees, and

6

resolving that issue depends on whether pre-litigation work that is reasonably-related to the litigation but is not preparation for the litigation should nevertheless be compensated under the terms of § 502(g) of ERISA.

Other courts have determined this issue. Some hold that by using the term "action," **see ERISA § 502(g)(1) ("In any *action* under this subchapter . . . the court may, in its discretion, allow a reasonable attorney's fee . . . ." (emphasis added))**, Congress meant in ERISA to preclude any sort of fee award to work that is not for the litigation proper, even though it is related to the litigation. *See, e.g., Parke v. First Reliance Standard Life Ins. Co.*, **368 F.3d 999, 1010 (8th Cir. 2004) ("Four circuits have considered this question, and all four have held that ERISA does not allow recovery of attorney's fees incurred during pre-litigation administrative proceedings." (citing** *Rego v. Westvaco Corp.*, **319 F.3d 140, 149–50 (4th Cir. 2003);** *Peterson v. Cont'l Cas. Co.*, **282 F.3d 112, 118–21 (2d Cir. 2002);** *Anderson v. Procter & Gamble Co.*, **220 F.3d 449, 452–56 (6th Cir. 2000);** *Cann v. Carpenters' Pension Trust Fund*, **989 F.2d 313, 315–17 (9th Cir. 1993))).** The Eighth Circuit considered this question in the context of an individual who, like Corbell, engaged in pre-litigation administrative proceedings "mandatory in a claim for benefits under ERISA's exhaustion requirement." *Id.* **at 1011.** Those proceedings, though, were "neither necessary for enforcement of a judicial decree nor so closely connected to the resolution of the judicial action as to fall within the scope" of Supreme Court precedent allowing for fees for administrative proceedings. *Id.* **(citing** *Sullivan v. Hudson*, **490 U.S. 877, 885 (1989);** *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, **478 U.S. 506, 558–59 (1986)).** "In fact, if an ERISA plan beneficiary prevails at the administrative level, there will be no judicial action at all. We cannot conclude that administrative proceedings are 'intimately tied to the resolution of

the judicial action' when judicial action often will not even be necessary." *Id.* **(quoting *Sullivan*, 490 U.S. at 888).**

The Court finds the reasoning of five courts of appeals on this issue controlling and holds that ERISA does not allow an award of attorney fees for pre-litigation administrative proceedings.

Reasonable rate

The Plan's second challenge is that Effland's fees are not recoverable at all since he was not admitted generally or pro hac vice in this case and, alternatively, he charged the wrong rates—those of the City of Indianapolis market instead of the rates usual in the Southern District of Illinois. They also challenge the rates charged based on the fact that Effland was supervised by Wilson throughout the litigation because he was not admitted to the bar of the Court. As such, the Plan argues that Effland's rate should be that of an attorney under supervision, i.e. an associate, and not of a principal. The Plan points to the associate rate of Ms. Jackson ($125 per hour) who has eight years experience as an alternate rate to apply to Effland's work. The Plan points to the rate of Mr. Berry ($185 per hour) as an alternate rate to apply to Wilson's work.

The challenges to Wilson's fees are easily dispatched. He charged $250.00 per hour, billed quarterly, and has been paid in full by Mrs. Corbell. (*See* Douglas Corbell Aff. 1; Wilson Aff. 2.) This is sufficient proof of a reasonable hourly rate under *Stark v. PPM America, Inc.*, **354 F.3d at 674–75,** such that the burden shifts to the defense as to why a lower rate is appropriate. They have not met that burden. When the Court considers the factors enunciated in *Andersen v. AB Painting & Sandblasting Inc.*, **578 F.3d at 544 n.1**, the hourly rate of Wilson is reasonable and customary for similar services in this area and the work performed was necessary for the proper representation of plaintiff.

As to Effland's fees the Court believes that although he may have added value to plaintiff's case, his failure to participate openly in this case as an attorney of record, combined with the relatively unremarkable legal complexity[6] (for an ERISA case), precludes recovery of his fees. He chose not to be admitted either generally[7] to the bar of this Court or pro hac vice.[8] As such he was not subject to the disciplinary rules of this Court.[9] Nor was he exposed to possible appointment in a pro bono matter on behalf of the Court.[10] He did not pay either a general admission or pro hac vice fee. Instead, he is revealed to the Court only when it is time for paychecks to be written.[11] The Court is also troubled by a potential issue which may or may not have a factual basis in this particular case:

---

[6] The relative simple nature of plaintiffs claim also belies the need for four legal counsel. Although the staffing of a case is not within the purview of the Court's authority—whether their fees are approved is.

[7] "Any attorney licensed to practice law in any state of the United States or the District of Columbia shall be admitted to practice generally in this Court upon payment of a **$200.00** fee as required by law . . . ." **S.D. Ill. R. 83.1(a).** "In all cases filed in, removed to, or transferred to this Court, all attorneys, including government attorneys, shall file a written entry of appearance before addressing the Court." **R. 83.1(f).**

[8] Local Rule 83.1(b) provides in pertinent part:

> Any attorney licensed to practice law in any state of the United States or the District of Columbia who does not wish to be admitted generally but wishes to be admitted for the purposes of a specific civil or criminal case only may, upon submission of a Motion to Appear *Pro Hac Vice* which contains a verified statement setting forth the state and federal bars of which the movant is a member in good standing, the bar number, if any, issued by each jurisdiction, and the required filing fee of **$100.00** for *pro hac vice* motions, be permitted to appear of record and participate *pro hac vice*.

[9] Local Rule 83.1(h) provides in pertinent part: "Conduct of attorneys admitted to practice in this Court is controlled by Local Rule 83.2."

[10] Local Rule 83.1(i) provides in pertinent part:

> In testimonial proceedings arising out of matters pending before this Court, every member of the bar of this Court, as defined in subparagraph (a) of this rule, shall be available for appointment by the Court to represent or assist in the representation of those who cannot afford to hire an attorney. Appointments shall be made in such a manner that no member of the bar of this Court shall be required to accept more than one appointment during any twelve month period.

The Court notes Mr. Effland accepted this case on a pro bono basis and the plaintiff is his cousin.

[11] The Court has made only a cursory review of the docket sheet but it appears Effland's name arises for the first time at Doc. 47 filed April 11, 2009 in the brief in support of fees where he is disclosed as an expert in ERISA who has worked on this case. The Court does not see his name on any proof of service or on the CM/ECF service list.

9

How is a party to evaluate its exposure in a case which includes possible payment of the opponents attorney fees when there is "ghost" counsel—that is, an attorney with the meter running but who is not of record or even admitted to practice in the case at issue?

A note of caution, however. The instant ruling is limited to the unique facts before the Court and ought not be read to stand for the broad proposition that in order to recover fees counsel must be admitted generally in this district or pro hac vice in the specific case.

Aside from the fatal failure to reveal himself as counsel in this case to the Court, Effland's fees are not recoverable because he has not met his burden of proving they are in conformity with market rates charged in the Southern Illinois area. He freely admits they are his "Indianapolis, Indiana" rates and are lower than his "national" rates. But how do they compare with market rates in the locality of the instant lawsuit? As *Stark* teaches, the relevant rate is the market rate in the geographical area of the litigation and the applicant of the fees bears the burden of showing they are within market. **354 F.3d at 674–75.** Effland has failed in that task.

Hours

The last challenge that the Plan makes to the fee award is on the basis of hours worked, claiming that Wilson duplicated many of the hours that Effland worked. Wilson spent a significant amount of time reviewing motions that Effland drafted, but because the Court has declined to award any fees for Effland's handiwork, this challenge is moot.

### III. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** the motion for attorney's fees (Doc. 46). It is **GRANTED** as to the request of attorney Robert C. Wilson or his associates for fees except for those associated with pre-litigation administrative proceedings. It is **DENIED** as to all fees requested for work performed by attorney Matthew Effland.

Counsel of record for plaintiff shall re-submit the fee bill to comport with this order, in particular:

1. Eliminating attorney fee charges for pre-litigation administrative proceedings since ERISA does not allow an award for them; and

2. Eliminating the fees of Effland.

Any objections to the resubmitted bill will be heard at in-court status conference on **Friday March 26, 2010 at 10:00 AM.** If all issues have been resolved by then and the Court can close the case, counsel should so notify the Court and the setting will be cancelled.

**IT IS SO ORDERED.**

**DATED February 17, 2010.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**